UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR FELICIANO,

                Petitioner,

- against -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2015

**ORDER**

12 Civ. 6202 (PGG) (RLE)

PAUL G. GARDEPHE, U.S.D.J.:

      Petitioner Victor Feliciano filed this action on August 10, 2012, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying him Social Security disability benefits. (Dkt. No. 2) On September 18, 2012, this Court referred this action to Magistrate Judge Ronald L. Ellis for a Report and Recommendation. (Dkt. No. 6) The parties subsequently filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. Nos. 16, 26)

      On September 11, 2014, Judge Ellis issued a report recommending that the Commissioner's motion for judgment on the pleadings be granted. (Report and Recommendation ("R&R") (Dkt. No. 28)) For the reasons stated below, the Commissioner's motion for judgment on the pleadings will be granted, and Petitioner's motion will be denied.

## BACKGROUND

      On May 15, 2008, Petitioner applied for disability insurance benefits and supplemental security income ("SSI"). (Administrative Record ("A.R.") (Dkt. No. 13) at 12) Based on his work history, Petitioner was eligible for disability insurance benefits only if his

disability began on or before March 31, 2005.[1] (Id. at 12) In his application, Petitioner alleged a disability onset date of January 1, 2004, based on three alleged disabilities: (1) depression, (2) asthma, and (3) degenerative disc disease in his back. (Id. at 15-16)

On June 20, 2008, Petitioner's claims for disability insurance benefits and SSI were denied. (Id. at 12) On July 25, 2008, Petitioner filed a written request for a hearing before an administrative law judge. (Id.) The hearing took place on April 22, 2010, before Administrative Law Judge ("ALJ") Seth Grossman. (Id.; see id. at 19)

I. **ADMINISTRATIVE PROCEEDINGS**

At the hearing, it became clear that Petitioner's claim for disability benefits was based primarily on his back condition. See id. at 51, 468. The back condition resulted from a car accident that occurred on April 7, 2004. (Id. at 468) ALJ Grossman questioned Petitioner about the treatment he had received after the accident. (Id. at 52) Petitioner testified that he had not gone to the hospital immediately after the accident, but had received therapy and diagnostic treatment – including x-rays and MRIs – "a little bit after" the accident from a facility "off Pelham Parkway." (Id.)

Petitioner's treatment records from this facility were not part of the record before ALJ Grossman. Accordingly, the ALJ instructed Petitioner to "try to get the records" of his treatment. (Id.) The ALJ left the administrative record open for 30 days after the hearing to permit Petitioner an opportunity to submit these treatment records. (Id. at 12)

---

[1] To qualify for Social Security disability insurance benefits, a claimant generally must, inter alia, have earned at least twenty "quarters of coverage" over the ten-year period prior to the onset of disability. Here, Petitioner's earning records indicate that he had acquired sufficient quarters of coverage to remain eligible for disability insurance benefits through March 31, 2005 (the "date last insured"). (A.R. (Dkt. No. 13) at 12-13) Accordingly, Petitioner was required to establish that his disability arose on or before March 31, 2005, to qualify for disability insurance benefits.

Petitioner's counsel obtained the treatment records and submitted them to the ALJ, who placed them in the administrative record. (Id. at 12, 469-501) These records indicate that "[o]n April 8, 2004, Mr. Feliciano was seen for evaluation of acute injuries sustained in a motor vehicle accident which occurred on April 7, 2004." (Id. at 479) Petitioner "received chiropractic, physical therapy and acupuncture treatments 3-4 x a week from 4/8/04 to 11/23/04." (Id.) MRI results from April 2004 indicate "a focal disc bulge C4-5, C5-6" and "L5-S1 disc desiccation, disc herniation and disc bulge." (Id. at 469) Treatment notes from September 2004 state that Petitioner complained of "constant" back pain, for which he received a "Nerve Block Injection." (Id. at 473) Petitioner stopped receiving treatment in November 2004, however. (Id. at 479)

In 2009, Petitioner was treating with Dr. Peter Albis, a chiropractor.[2] Dr. Albis had also treated Petitioner in 2004. (Id. at 479) In a March 31, 2009 report, Dr. Albis states that Petitioner's "condition has worsened since discontinuing [treatment]" in November 2004 (id.), and that Petitioner's disc herniation and disc bulges appear "permanent." (Id. at 484) These conditions "will likely continue to cause him pain and restrict his range of motion by thirty-eight percent." (Id. at 484) Dr. Albis further states that "the accident of April 7, 2004 was the direct competent producing cause of [Petitioner's] above noted permanent injuries." (Id. at 484) Based on these records, Petitioner's counsel asked ALJ Grossman to find that Petitioner was disabled as of March 31, 2005 – Petitioner's date last insured – as "the result of a car accident that took place on April 7, 2004." (Id. at 468)

---

[2] Dr. Albis works at Tri State Chiropractic, 665 Pelham Parkway North, Bronx, New York. (Id. at 479)

3

On June 1, 2010, ALJ Grossman issued his opinion. (Id. at 19) The ALJ ruled that Petitioner was not entitled to disability insurance benefits because he was not disabled within the meaning of the Social Security Act at any time on or before March 31, 2005. (Id. at 15) In reaching this conclusion, the ALJ noted that

> [t]he Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .
>
> The record does not demonstrate that the claimant was disabled as of March 31, 2005, the claimant's date last insured. The claimant has alleged disability beginning January 1, 2004 based upon symptoms of lower back pain, asthma and depression. With regard to the claimant's back pain, although the record contains an MRI in September 2004, and treatment in 2004, this treatment ended in November 2004, indicating a medical condition that lasted for less than a period of twelve months . . . . There is no indication of treatment in 2005 or 2006 . . . .
>
> Accordingly, as there was no medical evidence to substantiate the existence of a medically determinable impairment prior to the claimant's date last insured, the claimant was not under a "disability" and is not eligible for a period of disability and Disability Insurance Benefits.

(Id. at 15)

As to Petitioner's claim for SSI, the ALJ determined that "[b]eginning on May 15, 2008, the claimant has had the following severe impairments: affective disorder, asthma and degenerative disc disease . . . ." (Id. at 16) Although he determined that Petitioner's back condition – as of May 15, 2008 – qualified as a "severe impairment" (id.), ALJ Grossman found that the condition did not

> meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . . Listing 1.04[ – the list of impairments applicable to Petitioner's back condition –] requires a disorder of the spine, resulting in compromise of a nerve root or the spinal cord with either evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. The criteria of listing 1.04 have not been satisfied.

(Id.)

4

Nevertheless, based in part on Petitioner's back condition, the ALJ found that, "[b]eginning on May 15, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform . . . ." (Id. at 18) Based on this finding, the ALJ determined that Petitioner was entitled to SSI. (Id. at 19)

Accordingly, ALJ Grossman granted Petitioner's claim for SSI but denied his claim for disability insurance benefits. (Id.)

Petitioner then filed this action, challenging the denial of his claim for disability insurance benefits. (Dkt. No. 2) This Court referred the case to Judge Ellis for an R&R. (Dkt. No. 6)

## II.     THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In setting out the background of Petitioner's claim, Judge Ellis conducted a thorough review of Petitioner's medical records. (R&R (Dkt. No. 28) at 4-13) Those records contained no evidence that Petitioner received treatment for his back condition between November 2004 and the end of 2005. See id. Accordingly, Judge Ellis concluded that "[s]ubstantial evidence . . . support[ed] [ALJ] Grossman's determination that [Petitioner] did not have a severe impairment prior to March 31, 2005, the date last insured," and thus was not entitled to disability insurance benefits. (Id. at 25)

Judge Ellis also considered Petitioner's argument that his degenerative disc condition in 2004 "qualified as a severe impediment under Listing 1.04(A) under step three of the [disability] analysis . . . ." (Id. at 26) Judge Ellis noted that

> Listing 1.04(A) includes disorders of the spine that result in the compromise of the nerve root or the spinal cord with either evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. . . .

5

> However, because [the ALJ] found that [Petitioner's] degenerative back disease did not result in a severe impairment under step two of the analysis, he was not required to assess whether it qualified as a severe impairment under step three. . . . Even if [the ALJ] was required to consider whether [Petitioner's] condition qualified as a severe impediment under Listing 1.04(A), the condition does not qualify because it did not compromise the nerve root or cause sensory loss. . . . Medical evidence from 2004 indicated that [Petitioner's] slightly bulged discs caused slight back pain but did not result in sensory loss.

(Id. at 26) (citations omitted)

Judge Ellis went on to recommend that the Commissioner's motion for judgment on the pleadings be granted. (Id. at 32)

### III.   PETITIONER'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Petitioner raises two objections to Judge Ellis's R&R. Petitioner argues that Judge Ellis should have found that (1) Petitioner's degenerative disc disease began in 2004 and lasted through 2009; and (2) Petitioner's back condition qualified as a spine disorder within the meaning of Listing 1.04(A) as of March 31, 2005.[3] (Pet. Objection (Dkt. No. 29) at 2, 4, 6)

With respect to the first objection, Petitioner argues that the ALJ and Judge Ellis ignored medical evidence demonstrating that Petitioner suffered a back injury on April 7, 2004, that rendered him permanently disabled:

> ALJ Grossman states that although there are MRIs from 2004, and treatment notes in 2004, there is no indication of treatment in 2005 or 2006 for his condition. Accordingly, the ALJ posits that since there is no evidence of treatment after November 2004, his disability ended and he was not disabled for a period of a year . . . . [Dr. Albis's March

---

[3] Petitioner also appears to argue that the ALJ represented that he would rule favorably on Petitioner's application for disability benefits if Petitioner obtained and submitted Dr. Albis's treatment records from 2004. (Pet. Objection (Dkt. No. 29) at 3) Although the ALJ encouraged Petitioner to obtain and submit these records, he did not indicate that submission of these records would necessarily result in a favorable determination concerning Petitioner's application for disability benefits. To the contrary, after stating that he would be issuing a "partially favorable decision" – granting Petitioner's application for SSI but denying his application for disability benefits – the ALJ stated that, "I seriously doubt anything is going to change. [The records obtained from Dr. Albis for 2004] would have to be extremely convincing." (A.R. (Dkt. No. 13) at 54-55)

6

2009] report[, however,] states that since November 23, 2004, [Petitioner's] condition has worsened and active symptoms persist. . . . Dr. Albis's report concludes, "based upon the patient's history, examination findings and test results which include a disc herniation and disc bulges with nerve compression in the neck and lower back, it may be stated with a reasonable degree of medical certainty that the accident of April 7, 2004 was the direct competent producing cause of Mr. Feliciano's . . . permanent injuries."

(Id. at 4)

With respect to the second objection, Petitioner argues that his back condition met the criteria of Listing 1.04(A) as of March 31, 2005. (Id. at 2-3) Petitioner relies on (1) an April 14, 2004 MRI that noted a focal disc bulge; (2) an April 15, 2004 MRI that noted disc dislocation, disc herniation, and a disc bulge; (3) a 2009 report concluding that Petitioner's injury occurred in an automobile accident on April 7, 2004; (4) a June 6, 2008 MRI that noted "substantially the same . . . results" as the 2004 MRIs; and (5) records concerning a nerve block procedure performed on Petitioner's lower back at Dr. Albis's office in 2004. (Id. at 2-4) Petitioner claims that this evidence shows that he was suffering from a disability in 2004 that met the requirements under Listing 1.04(A). (Id. at 2-4, 6)

## DISCUSSION

I. **LEGAL STANDARD**

   A. **Social Security Disability Determinations**

Social Security Administration ("SSA") regulations mandate a five-step inquiry to determine whether a claimant is disabled under 20 C.F.R. § 404.1505. See 20 C.F.R. § 404.1520(a)(4). Each step is addressed in sequential order. See id. "If [the SSA] can find that [a claimant] [is] disabled or not disabled at a step, [it] make[s] [its] determination . . . and . . . do[es] not go on to the next step." Id.

At the first step, the Commissioner must determine whether the individual is currently engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the

7

second step, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment and, if so, whether the impairment meets the duration requirement of § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the Commissioner determines whether the impairment meets or equals a listing in Appendix 1 of 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant proves that he has an impairment that meets a listing in Appendix 1, the Commissioner may find the claimant disabled. Id. Otherwise, the Commissioner will proceed to consider the remaining two steps. See 20 C.F.R. § 404.1520(d). At the fourth step, the Commissioner determines whether the claimant possesses a residual functional capacity such that he can perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, then at the fifth step, the Commissioner determines whether, given claimant's residual functional capacity and his age, education, and work experience, he can perform other work. 20 C.F.R. § 404.1520(a)(4)(v).

Petitioner bears the burden of proof as to the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012). At step five, however, the burden shifts to the Commissioner to prove that the claimant is not disabled. Id.

B. **Standard of Review**

This Court "may accept, reject, or modify, in whole or in part," the findings or recommendations issued by a magistrate judge. 28 U.S.C. § 636(b)(1). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Id. "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); Ortiz v. Barkley,

558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted).

A district court reviewing a denial of Social Security benefits will "set aside [an] ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (alteration in original). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratt v. Charter, 94 F.3d 34, 37 (2d Cir. 1996) (citation and quotation marks omitted).

## II.   ANALYSIS

As noted above, Petitioner has made two objections to the R&R. The first relates to the onset, nature, and duration of the impairment Petitioner allegedly suffered on April 7, 2004. The second concerns whether that impairment met the Listing 1.04(A) requirements as of March 31, 2005. (Pet. Objection (Dkt. No. 29) at 2-4, 6) Although Petitioner repeats here some of the same arguments he made to Judge Ellis, his objections are not "conclusory or general." Indymac Bank, 2008 WL 4810043, at *1. Accordingly, this Court will review de novo the portions of the R&R to which Petitioner objects.

### A.   The ALJ's Findings Concerning the Nature and Duration of Petitioner's Back Condition Prior to March 31, 2005

Petitioner's primary objection concerns the ALJ's determination – at the second step of the disability analysis – that as of March 31, 2005 Petitioner's back condition was not a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." See A.R. (Dkt. No. 13) at 15. The

9

ALJ found that "[w]ith regard to the claimant's back pain, although the record contains an MRI in September 2004, and treatment in 2004, this treatment ended in November 2004, indicating a medical condition that lasted for less than a period of twelve months." (Id.) Accordingly, the ALJ determined that Petitioner suffered from a medical condition in 2004, but that the condition did not continue for a sufficient period of time to constitute a severe impairment under the Act. See id.; 20 C.F.R. § 404.1509. The ALJ based this conclusion on his finding that "treatment ended in November 2004. . . . There is no indication of treatment in 2005 or 2006 . . . ." (A.R. (Dkt. No. 13) at 15)

Substantial evidence supports the ALJ's conclusion that Petitioner's back condition in 2004 lasted less than twelve months, and thus did not qualify as a "severe impairment" under the Act. Dr. Albis's March 2009 report states that Petitioner "received chiropractic, physical therapy and acupuncture treatments 3-4 x a week from 4/8/04 to 11/23/04." (Id. at 479) That report also indicates that treatment was "discontinu[ed]" after November 23, 2004. (Id.)

Although Dr. Albis's March 2009 report indicates that Petitioner's back condition had "worsened" by the time of the March 2009 report, that report does not constitute evidence that Petitioner was disabled as a result of his back condition between November 2004 and March 2009. (Id.) In particular, the March 2009 report sheds no light on Petitioner's back condition between November 2004 and March 31, 2005 – Petitioner's "date last insured." Although Dr. Albis opines in March 2009 that "the accident of April 7, 2004 was the direct competent producing cause" of Petitioner's "permanent" back condition (id. at 484), this conclusion in 2009 does not establish that Petitioner was disabled as of March 31, 2005.

10

Dr. Albis's March 2009 report states that Petitioner's treatment ended in November 2004 (id. at 479), and there is no evidence whatsoever that Petitioner received treatment during 2005. It was Petitioner's burden to establish – as of March 31, 2005 – a "physical . . . impairment that . . . has lasted or c[ould] be expected to last for a continuous period of not less than 12 months." (A.R. (Dkt. No. 13) at 15 (emphasis added); see 20 C.F.R. § 404.1509) The evidence shows that Petitioner stopped receiving treatment for his back condition in November 2004 – approximately seven months after the car accident – and that he did not have any further treatment during 2005. These facts support the ALJ's conclusion that Petitioner was not disabled as of March 31, 2005.

The record does indicate that Petitioner resumed treatment for his back condition in 2006. (A.R. (Dkt. No. 13) (July 2006 F.E.G.S. Biopsychosocial Summary) at 168 ("C1 states that he goes to physical therapy 3X/wk" related to "chronic" back condition), 172 ("lower back s/p MVA 2002. rehab 3/wk"), 175 ("s/p MVA 2001 resulted in LBP. rehab 3/wk . . . . can perform light work duty with voca rehab to spine clinic assessment. avoids heavy lifting/bending" and recommending 30 hours of "Vocational Services"); id. (2006 Medical Records) at 258 ("[r]ehabilitation" for "Low Back Pain – after MVA 4/2002"), 259 ("PT for 1-2 session for HEP. Pt to bring MRI report" regarding "Low Back Pain – after MVA 4/2002")) Although the ALJ did not consider this evidence, see id. at 15 ("There is no indication of treatment in . . . 2006 . . . ."), that error is harmless. Records showing treatment in 2006 do not demonstrate that Petitioner was disabled as of March 31, 2005.

Given that there is no evidence that Petitioner received treatment for his back condition between November 23, 2004 and the end of 2005, Petitioner did not meet his burden of demonstrating that – as of March 31, 2005 – he suffered from an impairment that had "lasted or

11

c[ould] be expected to last for a <u>continuous</u> period of not less than 12 months." (<u>Id.</u> (emphasis added); <u>see</u> 20 C.F.R. § 404.1509)

Accordingly, the ALJ properly determined at step two of the analysis that Petitioner's condition was not a severe impairment.

**B.    Whether the ALJ Erred in Finding that Petitioner's Condition Did Not Meet the Listing 1.04(A) Requirements as of March 31, 2005**

Petitioner also argues that the ALJ should have found that Petitioner was disabled as of March 31, 2005, because his degenerative disc disease met the criteria of Listing 1.04(A) as of that date. (Pet. Objection (Dkt. No. 29) at 2-3, 6)  This determination occurs at step three of the five-step disability analysis. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iii).  Because the ALJ found that – as of March 31, 2005 – Petitioner's back condition did not rise to the level of a severe impairment under step two of the analysis, he did not consider whether Petitioner's condition met Listing 1.04(A) as of that date. <u>See id.</u>; A.R. (Dkt. No. 13) at 15.  Each step in the disability analysis is sequential; if a claimant does not satisfy step two of the analysis, the analysis ends, and the claim is denied. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(ii) ("If we can find that you are disabled or not disabled at a step, we make our determination . . . and we do not go on to the next step. . . . At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe . . . impairment that meets the duration requirement . . . , we will find that you are not disabled.").  Because ALJ Grossman properly determined at step two of the analysis that Petitioner's condition was not a "severe impairment," he committed no error in not considering whether Petitioner's condition met Listing 1.04(A)'s requirements.

## CONCLUSION

For the reasons stated above, Magistrate Judge Ellis's recommendation that the Commissioner's motion for judgment on the pleadings be granted is adopted by this Court. Accordingly the Commissioner's motion for judgment on the pleadings (Dkt. No. 26) is granted, and Petitioner's motion for judgment on the pleadings (Dkt. No. 16) is denied. The Clerk of the Court is directed to terminate the motions and to close this case.

Dated: New York, New York
       March 31, 2015

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge